MOISE, Justice.
In a suit for damages alleged to have resulted from defendant’s breach of a written contract, judgment was rendered in favor of plaintiff for $6,062. Defendant has appealed.
The record discloses that the agreement herein involved was entered into on July 24, 1954, between Edward A. Dufresne, owner of the Green and Gold Plantation in Luling, Louisiana, and Theogene F. Larose, a contract sugar cane machine cutter. The agreement provided for the cutting by plaintiff of five hundred acres of the 1954 and 1955 sugar cane crops grown by the defendant on his plantation, at a stipulated price of $14 per acre.
The contract was the outcome of several conversations between plaintiff and defendant, during the course of which defendant told plaintiff that he was dissatisfied with plaintiff’s work in cutting his 1952 and 1953 sugar cane crops and suggested that plaintiff get his machines in better shape. Having previously used a “Thompson” machine, *45 plaintiff bought a new “J. & L.” machine at a cost of $10,500, and defendant told him that he would give him a two year contract to help pay for the machine.
Plaintiff placed the new “J. & L.” machine on defendant’s plantation in August of 1954 and operated it a short time cutting plant cane. It is defendant’s testimony that his crop was in good condition at that time, and that after observing the operation of the machine he told plaintiff that he was not satisfied. He stated:
“I have not examined the work of the machine, except when he cut the first one hundred (100) feet I warned him that it would not be able to cut the crop; and he said he would try — which he did, and put all kinds of gadgets on to make it work better; and it did not work better, and that’s when I stopped him.”
Plaintiff testified that defendant’s cane was straight up in August, 1954, and that he (the defendant) was satisfied with the operation, there being no mashing.
Thereafter, Ivy Melancon, defendant’s overseer, operated the machine one day on the plant cane, and his testimony is to the effect that he was dissatisfied with its cutting. He stated that the machine would not deliver cane to the carrier; that the right wheel would pass over the cane and put it down in the middle and would then pass over the cane and mash it.
During the interim from August to October, repair and adjustment of the machine was attempted.
In October, 1954, plaintiff and his two assistants, Paul Dennis and Louis Alvorado, reported to defendant’s plantation to begin the harvest cutting of cane for grinding, using the “J. & L.” machine. Plaintiff’s testimony is to the effect that the cane was flat on the ground, and his two assistants testified that the crop was not in good condition and the ground was dry. Defendant stated that the cane was twisted in spots. Plaintiff cut cane for approximately four days, working on two stretches, and all parties are in accord that the “J. & L.” machine would not perform the job. Sixty-seven acres of cane were cut during this time and the August cutting, for which plaintiff has been paid.
When defendant’s overseer observed that it would take four or five months to cut the cane with the “J. & L.” machine (there was only an approximate nine weeks’ allowance from the mill), he reported this fact to the defendant. The tonnage for the season was near 22,000 tons — the largest crop defendant had ever grown. Defendant estimated that his loss would be near $60,000 and that his cost would be double if the work was continued with the “J. & L.” machine. His employees all testified that the scrapping was voluminous during the use of the “J. & L.” machine, and, to an extent, that half of *47 the working time was consumed with that task instead of loading.
At a time when plaintiff was not on defendant’s plantation, one of his workers was notified that the cutting would have to be stopped, and he called plaintiff and communicated this information to him.
With respect to his next move in negotiating with the defendant, plaintiff testified as follows:
“I went next day; and when I did come next day he said he was busy. He said he was busy doing so many things he just spoke a few words and said ‘Get that junk off of my place, and get another machine.’ So at the time he told me that, I could not agree with him on anything, and offhand I did not know where I could get another machine. So when I went home that evening, that’s when I saw Mr. Edward Klause and Mr. R. J. Larose and asked them to come there with me next day to make some kind of agreement with Mr. Dufrene to cut the cane so I wouldn’t lose the whole five hundred (500) acres of cane.”
Following this meeting, plaintiff went back to Mr. Dufresne’s office, accompanied by Edward Klause and Royal J. Larose. Their purpose was to see if they could negotiate for cutting the remainder of defendant’s sugar cane crop. Defendant was very busy and about to leave for a rice bidding, at which he had a large quantity of rice to sell. He refused to talk with plaintiff, but he did remark that they might make a deal.
Upon his return from the rice mill, defendant contacted Edward Klause, R. J. Larose, and Merrick LaBlanc, and engaged them to cut his crop at $14 per acre — the same price he had stipulated to pay plaintiff. The cane was cut with “Thompson” cutters, and defendant’s costs were reduced to what he thought they should be.
Plaintiff made no further attempt to contact the defendant and had his machine removed from the plantation. Plaintiff’s testimony is to the effect that he made very little use of this machine thereafter.
The present proceeding, in which plaintiff prayed for the remainder of the contract price due him for the 1954 sugar cane cutting, was filed in April, 1955.
Plaintiff contends that the defendant made the performance of the instant contract impossible, and that, therefore, defendant bears the responsibility of damages. He argues that defendant’s refusal to submit the differences to arbitration prevented the fulfillment of the contract.
Defendant contends that under the terms of the contract, he was entitled to terminate the services of the plaintiff. The contract provides in part:
“ * * * The Party of the First Part further binds and obligates itself *49 to cut enough cane from said land to maintain the schedule of factory-quotes of Party of the Second Part, but may not cut ahead of schedule, which schedules are to be determined by Second Party. Manner of cutting cane shall be under direction of and to the satisfaction of Party of the Second Part.” (Italics ours.)
“That this obligation shall apply, however only to sugar cane which is in proper condition and suitable for cutting by the use of cane cutting machines; suitability of cane for cutting by mechanical harvester to be determined by mutual agreement, but in case of any dispute it shall be determined by Third Party.
‡ ‡ j|i jfc 5{C 5}«
“This contract is made only for the cutting of 500 acres cane by First Party but notwithstanding said statement of quantity, Second Party reserves the right at any time, if in the Second Party’s judgment, weather or other conditions make it advisable to terminate any further cutting of cane by First Party without any liability to First Party as the result of such termination regardless of number of acres which have been cut of said cane by hand or by any other means Second Party may desire. * * * ” (Italics ours.)
From an examination of the entire record and an evaluation of the testimony therein included, we conclude that plaintiff did not fulfill his part of the contract. His machine could not and did not perform at the time of harvesting the sugar cane crop. It is true that wind had twisted the cane to some extent and it was not straight up; however, the cutters later employed by the defendant were able to cut the crop without any appreciable scrap waste or increase in costs.
Under the terms of the contract, a resolutory condition existed. R.C.C. 2045. This took place when defendant was unable to meet factory quotes and his cost was mounting. When such condition occurred, defendant had the right to terminate the contract.
Defendant did not attempt to arbitrate, but the record does not disclose any real attempt on the part of plaintiff to arbitrate other than when he went to defendant’s office with Mr. Klause and Mr. R. J. Larose and the defendant was unable to talk with him. He did not go back.
In the casé of Godchaux Sugars, Inc., v. Chaisson, 227 La. 146, 78 So.2d 673, we recognized that time is of the essence in harvesting a sugar cane crop, because of the perishable nature of the crop and the emergencies of grinding. In the instant case, the defendant was confronted with these factors.
*51 Since the plaintiff instituted the present proceeding and the matter is before us for determination, we are not called upon to pass on the question of whether defendant should have sued for the dissolution of the contract.
We find that the defendant is entitled to have the contract herein involved dissolved and set aside, except as to that portion of the sugar cane crop which plaintiff cut and was paid for by the defendant.
For the reasons assigned, the judgment of the trial court is reversed and set aside, and plaintiff’s suit is dismissed at his cost.
FOURNET, C. J., concurs in the decree.